UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ANDREW JAMES,

                              Plaintiff,

                                                                    6:13-CV-1508

v.

                                                                      (TJM/TWD)

EX-UNITED STATES OF AMERICA PRESIDENT
GEORGE W. BUSH, SR.,

                              Defendant.

_____

APPEARANCES:

ANDREW JAMES
Plaintiff, *pro se*
00-A-3509
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

      The Clerk has sent this *pro se* complaint together with an application to proceed *in forma pauperis* to the Court for review. (Dkt. Nos. 1 and 5.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 5) and recommend that the action be dismissed without leave to amend.

**I.    ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

      Plaintiff has commenced this action for wrongful conviction and imprisonment, negligence, and violation of his Fourteenth Amendment right to due process+ against Defendant,

former United States President George H.W. Bush ("former President Bush").[1] According to Plaintiff, in 1996, he was approached by Wydan Storm Manning ("Manning"), whom Plaintiff had known since 1992. (Dkt. No. 1 at 5.) Manning informed Plaintiff that he wanted to blow up a historical building in New York. *Id*. Plaintiff told Manning it was not a smart thing to do, and that he wanted no part of it. *Id*. Within the same year, a man whom Plaintiff knew as Crown Heights ("Heights") told Plaintiff that he was conspiring with Manning to blow up a historical monument in New York City and other historical monuments nationwide. *Id*. Both Manning and Heights told Plaintiff they knew they were planning to commit terrorist acts against the American government and the citizens of the United States. *Id*.

Although Plaintiff was unable to convince Manning not to proceed, he was finally able to convince Heights to help the United States government stop Manning and suggested to Heights that he speak with Defendant, whose term in office had previously ended.[2] *Id*. Defendant had Heights take a series of lie detector tests that revealed and confirmed that Heights had conspired with Manning to blow up a historical monument. *Id*. Two years later, while acting as a government public official, Defendant made the decision to have Manning murdered and hired Plaintiff as a mercenary to carry out the killing. *Id.* Plaintiff had been an active hired mercenary for a number of governmental officials and had been awarded numerous Army medals for his work as a mercenary. *Id*. at 6. Acting on behalf of the American government, Plaintiff shot and

---

[1] Based upon the allegations in the Complaint, I have concluded that Plaintiff intends to name former President George H.W. Bush, rather than his son, former President George W. Bush, as Defendant. Therefore, all references herein to former President Bush are to former President George H.W. Bush.

[2] I take judicial notice of the fact that George H.W. Bush served as the forty-first President of the United States from 1989 to 1993.

2

killed Manning on June 28, 1999 in Brooklyn, New York. *Id*. Plaintiff was paid $10,000 for the killing by Defendant's aide, known to Plaintiff as Desi. *Id*. at 6.

Plaintiff claims that Defendant had an obligation to contact local police and the Kings County District Attorney's Office to let them know that the killing of Manning was justified and had taken place on the order of the United States government. Id. at 5-6. According to Plaintiff, Defendant failed to inform the local officials and, as a result, on July 10, 1999, Plaintiff was charged with second degree murder for killing Manning and ultimately sentenced to 15 years to life. *Id.* at 6.

According to Plaintiff, Defendant violated his Fourteenth Amendment right to due process and was negligent in failing to disclose to King's County officials that Manning's killing was legal at the time Plaintiff was charged with murder. *Id*. at 7. Plaintiff, who is currently confined at Marcy Correctional Facility, seeks his immediate release from incarceration. *Id*.

## II.  IN FORMA PAUPERIS APPLICATION

The Court finds that plaintiff has indicated sufficient economic need and has filed the Inmate Authorization Form required in the Northern District of New York. (Dkt. No. 5.) Plaintiff may therefore proceed with this matter *in forma pauperis*.[3]

---

[3] Plaintiff filed his initial application to proceed *in forma pauperis* on December 6, 2012. (Dkt. No. 2.) On the same date, the Hon. Thomas J. McAvoy, Senior U.S. District Judge, issued an Order Directing Compliance with Filing Fee Requirements: (1) informing Plaintiff of the requirement that he submit a completed and signed *in forma pauperis* application certified by an appropriate official at the correctional facility, along with a signed inmate authorization form (*See* 28 U.S.C. § 1915(a)(1),(2); N.D.N.Y. L.R. 5.4(b)(1)(A)(B)); and (2) placing Plaintiff on notice that pursuant to 28 U.S.C. § 1915(b)(3), a prisoner granted *in forma pauperis* status is required to pay, over time, the full amount of the $350.00 filing fee, regardless of the outcome of the action. (Dkt. No. 4.) Plaintiff submitted a certified application to proceed *in forma pauperis* on December 16, 2013. (Dkt. No. 5.)

## III.     LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

28 U.S.C. § 1915(e) (2006) directs that when a litigant proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (2006).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

4

to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When screening a complaint, the court has the duty to show liberality towards *pro se* litigants. *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam). "[E]xtreme caution should be exercised in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and [the] parties have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

A *pro se* complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal

quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

IV. **ANALYSIS**

Plaintiff has asserted claims for wrongful conviction, wrongful imprisonment, negligence, and violation of his Fourteenth Amendment due process rights by former President Bush, who while acting in public office allegedly hired Plaintiff as a mercenary for the United States to kill Manning.[4] (Dkt. No. 1 at 4.) Plaintiff claims that Defendant violated his due process rights by failing to inform local police and the Kings County District Attorney's Office that Manning's murder was authorized by the United States government, rendering Plaintiff immune from prosecution. (Dkt. No. 1 at 6.) Plaintiff is seeking fifty million dollars in compensatory damages and ten million dollars in punitive damages, along with the injunctive relief of his immediate release from prison. *Id*. at 9.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized the existence of a cognizable claim for money damages for constitutional violations committed by federal agents acting under color of federal law. *See Carlson v. Green*, 446 U.S. 14, 18 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court

---

[4] A President of the United States is absolutely immune from civil suits for damages for actions predicated on his official acts. *See Nixon v. Fitzgerald*, 457 U.S. 731, 749-755 (1982). According to Plaintiff's Complaint, Defendant's wrongful acts, while allegedly taken in his capacity as a public official, occurred after the expiration of his term as President of the United States. (*see generally* Dkt. No. 1.) However, if Plaintiff contends that former President Bush was acting under presidential authority with regard to the claims asserted against him, the former President would arguably be entitled to absolute immunity.

despite the absence of any statute conferring such a right.").

A *Bivens* cause of action "is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Iqbal*, 556 U.S. at 683. The constitutional standard of review for *Bivens* actions is the same as for claims brought under 42 U.S.C. § 1983, *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), and there is a "general trend in the appellate courts to incorporate § 1983 law into *Bivens* suits." *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (citation and internal quotation marks omitted).

"[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (emphasis in original). The Second Circuit has held that *Heck* applies to *Bivens* actions as well as those brought under § 1983. *See Tavarez*, 54 F.3d at 110 ("Given the similarity between suits under § 1983 and *Bivens*, we conclude that *Heck* should apply to *Bivens* actions as well.").

Under *Heck*, "a § 1983 [or *Bivens*'] suit for damages that would 'necessarily imply' the invalidity of the fact of an inmate's conviction . . . is not cognizable under § 1983 [or *Bivens*] unless and until the inmate obtains favorable termination of a state, or federal habeas, challenge to his conviction or sentence." *Nelson v. Campbell*, 541 U.S. 637, 646 (2004). Success by

Plaintiff in asserting his claims for wrongful conviction, wrongful imprisonment, negligence, and violation of his right to due process against former President Bush would call into question the validity of his conviction and sentence for murdering Manning.

Plaintiff has not alleged that either his conviction or sentence have been invalidated on appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. To the contrary, according to his Complaint, Plaintiff was sentenced to 15 years to life on his conviction of second degree murder in the killing of Manning and is presently incarcerated at Marcy Correctional Facility. (Dkt. No. 1 at 1, 4.) Moreover, the fact that Plaintiff presently seeks injunctive relief in the form of an immediate release from incarceration on the allegedly wrongful conviction shows that the conviction has not been invalidated.[5] *Id*. at 7.

Inasmuch as the claim asserted against former President Bush is barred by *Heck*, I recommend that Plaintiff's Complaint be dismissed for failure to state a claim, without leave to amend, under 28 U.S.C. § 1915(e)(2).[6]

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 5) is

---

[5] Where an inmate seeks injunctive relief "challenging the fact of his conviction . . . [s]uch claim[ ] fall[s] within the 'core' of habeas corpus and thus [is] not cognizable when brought pursuant to Section 1983." *Nelson,* 541 U.S. at 643. Since "the preemptive effect of a habeas corpus remedy is the same in prisoners' Section 1983 and *Bivens* suits," *Chin,* 833 F.2d at 23, Plaintiff's claim for injunctive relief challenging the fact of his conviction is not cognizable in a *Bivens* action.

[6] I recommend against granting Plaintiff leave to amend because "the problem with [the plaintiff's] causes of action is substantive" and a "better pleading will not cure it." *See Cuoco,* 222 F.3d at 112 (citation omitted).

granted; and it is

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be dismissed for failure to state a claim, without leave to amend, under 28 U.S.C. § 1915(e)(2).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: December 20, 2013
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge